Marinaro et al. *v*. Anders, Appellant.

Argued October 14, 1930. 

Before
Trexler, P. J., Keller, Linn, Gawthrop, Cunning-
ham, Baldrige and Whitmore, JJ.

*R. P. F. Maxwell*, and with him *George F. Blewett*,
for appellant.

*Michael A. Foley* of *Graham, Garaguso and Foley*,
for appellee.

Opinion by Cunningham, J., January 30, 1931:

On the afternoon of August 1, 1928, the minor plain-
tiff, then about nine years of age, while walking past
a mortar box used in connection with a building opera-
tion stumbled and fell partially into it, receiving
severe burns on her right hand and slighter ones on

her left. L. C. Kenney, the owner of a vacant lot, was erecting store rooms and apartments thereon and had awarded separate contracts to various persons for the different portions of the work. D. Webster Anders had the contract for the carpenter work, painting and glazing under a bid in writing, accepted by Kenney, and had also been employed by him, under an oral agreement and at a weekly wage, to superintend the entire construction. These actions were brought against Anders upon the theory that he was responsible for the alleged negligent placing of the uncovered lime box upon the sidewalk in front of the building. Verdicts were rendered in behalf of the minor plaintiff for her injuries, and in favor of her parents for the expenses of her medical attendance, and the defendant now appeals from the judgments thereon. As the same questions are involved, but one opinion will be filed.

The controlling issues were whether the injuries resulted from the negligent placing of the box, and, if so, whether appellant was chargeable with responsibility for its location. The first question was submitted to the jury by the learned trial judge, McDevitt, P. J., in a manner of which no complaint is made, and the second was decided against appellant upon the whole record. Errors assigned are the admission of certain evidence, the refusal of three points submitted by appellant, the first of which requested binding instructions, and the denial of his motions for a new trial or judgment n. o. v.

The mortar box was placed on the sidewalk and put in use during the forenoon of the day upon which the accident happened and there was a distinct controversy in the testimony relative to its exact location with respect to the building line and the curb, but, in view of the verdicts, we must accept the evidence most favorable to appellees and bear in mind that there

was no evidence that it was moved from its first location.

Considering the testimony in that light, the jury could reasonably have found these facts: The lot was located on Long Lane in the block between Clinton and Gillford Roads, Stonehurst Hills, Delaware County, and was the only vacant lot therein on that side of the street; the cartway of Long Lane is paved with concrete and a permanent sidewalk had been laid the length of the block with the exception of approximately one hundred and fifty feet in front of the vacant lot where, for several years prior to the beginning of construction, there had been a board walk made of planks laid on "three by four pieces." These boards had been removed and during construction there was neither pavement nor curb in front of the new building. At the time of the accident the steel work was in course of erection and the mortar box had been placed lengthwise upon the unpaved sidewalk in front of the building; it was twelve to fourteen inches in height and so placed that no space was left for the use of pedestrians, either between the box and the building or between it and the location for the curb, with the result that they were obliged to use the concrete cartway in passing; several cubic yards of sand had also been dumped along the street side of the box. In describing her fall, the minor plaintiff testified that, when she reached the obstruction while going to a store, she was obliged to walk in the concrete cartway; that traffic was coming toward her and caused her to turn toward the sidewalk; she continued: "Then I slipped on the sand, and there was a piece of wood underneath the sand, which was sticking out from the box, which I could not see."

There was, therefore, evidence from which the jury could properly find that the manner and location in and at which the box was placed amounted to negli-

gence on the part of the person or persons responsible therefor: Vallo v. United States Express Company, 147 Pa. 404; Stahle v. Poth, 220 Pa. 335; and Linderman v. Hershberger, 47 Pa. Superior Ct. 308. On the question of that responsibility there was evidence that the box belonged to one Krause who had the contract for the brick work. He testified that it was "placed where it was" at the "instruction" of appellant and appellant's own testimony on this matter reads: "Yes, I directed, in a general way, where the box was to go." Both Krause and appellant testified that it was placed far enough back from the outer edge of the sidewalk to permit pedestrians to pass along its side without being compelled to leave the sidewalk, but, for the purposes of this appeal, we adopt the testimony of the appellees that the outside of the box was at the line for the curb and that no passageway had been left for persons using the sidewalk. Appellant thus described his relation to the construction work: "I was employed by. Mr. Kenney to get the prices and to advise him on who should have the sub-contracts because of their prices and the quality of workmanship." Another portion of his testimony reads: "Q. Were there other sub-contractors on this job? A. Oh, yes. Every trade was there, of course— ...... mill work, lumber, brick work......everything that goes to make up the building. Q. Did you contract with these various sub-contractors? A. No, I had nothing to do except to see that they were practically knit together on the building, and that the work was—that the plans and specifications were complied with. Q. All these sub-contractors contracted directly with Mr. Kenney, didn't they? A. Yes."

The evidence, to the admission of which appellant objected, was in the form of a number of proposals addressed to him by contractors desirous of performing parts of the work. This evidence was admitted for

the purpose, as stated by the court, of testing the credibility of appellant in contending that he had nothing to do with the making of the contracts. It was admissible for that purpose and the assignment relating thereto is overruled. When all the testimony upon this subject is taken into consideration it is apparent that many of the proposals were addressed to appellant and when found by him to be satisfactory were accepted by Kenney and all bills paid by him through a trust company, upon vouchers approved by appellant. Appellant's second point read: "If you find from the evidence that the owner contracted with a sub-contractor to perform the brick work and this sub-contractor erected and maintained the mortar box, then your verdict must be for the defendant." This point completely ignored appellant's admission that he, as superintendent, had directed "where the box was to go," and was properly refused. By the third point the trial judge was requested to charge: "If you find from the evidence that the defendant was not the owner, nor the contractor, but was merely employed as the superintendent, then your verdict must be for the defendant." This was tantamount to asking for an instruction that an employe of the owner would not be responsible for his own negligence in directing that an unguarded box containing a dangerous substance be placed upon a public sidewalk in a manner which obstructed the passage of pedestrians lawfully using it. To state the proposition is to answer it. The term "sub-contractor" has been used rather loosely throughout this record but from what we have said about the facts it is apparent that neither Krause nor appellant was a sub-contractor in the sense that either of them had contracted with an original contractor for the performance of all, or a part of, the work or services which such contractor had himself contracted to perform: Words and Phrases, 3rd

Series, Vol. 7, p. 208. It is to be noted that the act found by the jury to have been negligently performed was not done in connection with the execution of appellant's contract for the carpenter work, etc., and that no question of relative liability as between owner and contractor is involved; hence the inapplicability of many of the cases cited by counsel for appellant. The act upon which liability is predicated was performed by appellant in his capacity as employe and agent of the owner. Whether the owner may also have been liable for this act of his servant is beside the question; however that may be, the servant was, under the circumstances here present, personally liable for his own negligence.

None of the assignments can be sustained and the judgments are severally affirmed.